# Webster & Wilson v. Singley.

### Action for Money had and received.

1. *Mortgagee ; how bound to apply proceeds of sale of mortgaged property.* —A mortgagee receiving, from property covered by his mortgage, a sum of money, is bound to apply it to the extinguishment of the mortgage debt, and cannot appropriate it to the payment of an unsecured debt.

2. *Same ; when subsequent mortgagee may maintain action against, for money had and received.*—Money received from a sale of the mortgaged property and remaining in the hands of the prior mortgagee after the satisfaction of his mortgage, is money had and received, belonging *ex equo et bono* to the subsequent mortgagees, for which they may maintain *assumpsit* against him if he refuses to pay it over.

3. *Same ; what may be shown in such action.*—In such an action the subsequent mortgagees may show the amount of money received by the prior mortgagee from the mortgaged property, in order to ascertain the sum in his hands to which they are entitled. No resort to equity is necessary to compel the appropriation of the moneys thus received—the law directs the appropriation of each payment according to the source or fund from which it is derived.

APPEAL from Circuit Court of Hale.

Tried before Hon. M. J. SAFFOLD.

One Williams on the first day of April 1869, executed a mortgage on certain lands and personal property, to Webster & Wilson to secure a debt due them. On the 10th day of July following, to secure debts due Singley and others, he executed a mortgage to them upon the personalty already mortgaged to Webster & Wilson.

After the execution of the mortgage to Webster & Wilson,

VOL. LIII.

[Webster *v.* Singley.]

Williams incurred an indebtedness to them, not embraced by their mortgage. One Jones was an unsecured creditor of Williams, and the two agreed with Webster & Wilson that Jones should take the lands embraced in the mortgage upon paying $550 to Webster & Wilson, which being paid to Love their attorney, they released the lands from the operation of their mortgage.

Love, who was attorney for Webster & Wilson, testified that "after finishing paying the mortgage to them, there remained about two hundred dollars, which they applied to an outside debt of Williams." This seems to have occurred about the last of December 1869. Love also testified that "in December, 1869, he, as attorney for Webster & Wilson sold the personal property embraced in the mortgage to them; that the announcement was made at the sale that any surplus of the proceeds, over the amount then due on the mortgage to Webster & Wilson, would be applied to the second mortgage held by plaintiff; that upon his doing so, said Williams and plaintiff permitted the sale to proceed without opposition ; that he received the proceeds of said sale, and after applying what was claimed to be due by Webster & Wilson on their mortgage, paid the balance derived from this sale, over and above all claimed by Webster & Wilson, amounting to $200, to the attorney of the second mortgagees, and satisfied the mortgage of Webster & Wilson ; that in said satisfaction, or in considering the mortgage satisfied, the amount in controversy in this suit was included by him as a part of said satisfaction." The plaintiff's mortgage debt remained unsatisfied, after crediting the $200 paid over by Love from the sales of the personal property, and they then brought *assumpsit*, for money had and received, against Love, to recover the surplus remaining after satisfying the mortgage.

Love having required Webster & Wilson to indemnify him against the suit, had a settlement with them, retaining money enough to protect himself, which he paid into court, and upon his affidavit under the statute suggesting their interest, they appeared and propounded their claims.

Williams testified that he intended that the money paid by Jones, should be applied to his mortgage debt to Webster & Wilson.

From the statement of the evidence, as given in the bill of exceptions, it can not be determined whether the money paid by Jones was received before, or after the sale of the personalty ; or how it was that the whole of the payment by Jones was not "surplus," if paid after the sale of the

[Webster *v*. Singley.

personalty, at which there was also a "surplus" of about $200 ; or, on the other hand, if the money paid by Jones left a "surplus," how it was that the proceeds of the sale of the personalty should not have gone to the second mortgagees.

The court charged the jury, in substance, that in such a case as this, the law would apply the money arising from the sale of the mortgaged lands to the satisfaction of the mortgage debt, and "that when the trust created by the first mortgage had been satisfied, the first mortgagee stood in the position of a mere naked trustee, and a second mortgagee was not driven into a court of equity, to recover a surplus alleged to be due, after the satisfaction of the first mortgage, from the proceeds of the mortgaged property, but could maintain *assumpsit* in a court of law against the first mortgagee, for money had and received."

Appellants excepted to the giving of this charge, and requested the court in writing to charge the jury, in substance, that the "surplus" arising from sales by the first mortgagee, could be recovered by the second mortgagees only in a court of equity. The court refused to give this charge, and appellants duly excepted.

The charge given, and the refusal to charge as requested are now assigned as error.

SMITH & ROULHAC, for appellants.

COLEMAN & SEAY, *contra.*

BRICKELL, C J.—It is a clear principle of law, that the source or fund from which a payment is derived will direct its appropriation ; that is, when money has come from a particular fund, it must be applied in relief of the source from which the fund arises. Thus a mortgagee, receiving from the property, covered by the mortgage, a sum of money, is bound to apply it in extinguishment of the mortgage, and cannot appropriate it to the payment of an unsecured debt he may hold. 1 Amer. Lead. cases, 341, 1 Hilliard on Mort. 278–9. It follows the appellants were bound to apply the moneys received from Jones, in consideration of the release to him of the real estate covered by their mortgage, to the payment of the mortgage. They were also bound to apply the moneys received on the sale of the personal property, in the same way. If the mortgagor, Williams, had sought to redeem, he would have been entitled to claim this appropriation, and the appellants could not have claimed from him

the independent debt not secured by the mortgage, and demanded it should be paid. 1 Hilliard on Mort. 279 The appellees as subsequent mortgagees had the same right to demand the appropriation.

2. The property mortgaged had been sold and converted into money by appellants, they having the prior mortgage. The surplus of the proceeds of sale, remaining in their hands after the satisfaction of their mortgage, was money had and received, belonging *ex equo et bono,* to the subsequent mortgages. It was recoverable in an action of assumpsit. *Hitchcock* v. *Lukens,* 8 Port. 333; *Huckabee* v. *May,* 14 Ala. 263. In such action it is permissible for the second mortgage to show the sums received by the prior mortgages from the property covered by his mortgage, that the sum in their hands to which they are entitled may be ascertained. No resort to a court of equity is necessary to compel the appropriation of such money to the satisfaction of his mortgage. The law makes the appropriation.

The rulings of the circuit court conformed to these views, and its judgment is affirmed.