**Frank PARONI and Harry J. Kane, Appellants,**

**v.**

**Irma QUICK, Appellee.**

**No. 3696.**

District of Columbia Court of Appeals.

Argued May 10, 1965.

Decided July 8, 1965.

Charles L. Norris, Washington, D. C., for appellants.

Marshall Peyton Johnson, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

Irma Quick, holder of a note secured by a second deed of trust, filed suit against Frank Paroni and Harry J. Kane, trustees under a first deed of trust, both deeds being secured upon the same improved real estate in the District of Columbia, to recover damages from them in their personal capacities for unlawfully failing and refusing to pay her in cash the surplus from the proceeds of a foreclosure sale after payment of the first trust.

The following facts were stipulated by the parties:

The secured debt under the first deed of trust, showing an unpaid balance of $4,597, being in default, the trustees were directed by the Home Building Association of the District of Columbia, as holder of the recorded first deed of trust, to foreclose under its terms. Mrs. Quick's promissory note was secured by a second deed of trust on the same property, of which the trustees had actual notice. The property was first advertised for sale at auction in terms requiring all cash. This notice was then revoked and the property readvertised upon terms requiring $1,000 cash deposit, balance $7.50 a thousand, or all cash, at the trustees' discretion. Subsequently the property was sold for $7,750, with the purchaser paying $1,000 down and giving a deferred purchase money note to the order of the trustees under the foreclosed deed of trust in the amount of $6,750, bearing 6% interest, payable $50 per month, with the privilege of prepayment, and secured by a first deed of trust on the property sold. After deduction of all proper charges, the proceeds in the hands of the trustees consisted of the deferred first trust note of $6,750 and cash in the amount of $286. Thus, the surplus to be applied to discharge the second deed of trust was $2,439. The amount of the second trust note held by Mrs. Quick at the time of foreclosure was $2,405.53.

The trustees endorsed the new promissory note in blank "without recourse" and delivered it to the Home Building Association. A letter dated June 11, 1964, from Charles L. Norris, counsel for the trustees, to trustee Paroni, stated, in part:

I understand the deferred purchase money note is to be transmitted to the Home Building Association for collection for the account of yourself and Harry J. Kane, Jr., as trustees under the foreclosed trust. It is further my understanding that payments made * * * shall be immediately applied to payment of the defaulted debt * * until [this] obligation is paid in full.

Payments upon said deferred purchase money note after satisfaction of Home Building Association debt will then be credited or disbursed as you and Mr. Kane, as trustees, shall then direct.

It is understood that this deferred purchase money note will be held by Home Building Association solely as collection agent for you and Mr. Kane, as trustees as aforesaid, and subject to the control of said trustees.

Counsel for both parties submitted their agreed statement of facts at the time of trial. The trial judge ascertained from questioning trustee Paroni that it was the intention of the trustees that the note be held by the Home Building Association for collection only. A final judgment was entered for appellee in the amount of $2,483.-32 against the trustees in their individual capacities upon the ground that as trustees they were without authority to sell upon terms which allowed credit to the purchaser at foreclosure in excess of the amount due under the foreclosed deed of trust and expenses of sale. From this judgment the trustees have appealed.

The principal error claimed by the trustees was this holding of the trial judge

that they were personally liable to pay cash to the holder of the second deed of trust before collection of the deferred purchase money note and satisfaction of the defaulted first deed of trust debt and expenses of the foreclosure sale.

It was provided that upon default in any of the terms, conditions or agreements in the first deed of trust the trustees shall "sell said land and premises, or any part thereof, at auction, at such time and place, upon such terms and after such advertisement as it deems advantageous and upon compliance with the terms of sale, convey the same in fee simple to the purchaser."

Trustees under a deed of trust occupy a dual relationship, representing primarily the mortgagee to the extent of satisfying the mortgage and, in case of sale, conveying the property to the purchaser. They are likewise trustees for the mortgagor or owner of the equity of redemption as to any surplus derived from the sale above the amount necessary to satisfy the claim of the mortgagee. When the first lien secured by the deed of trust is satisfied, the trustees are no longer trustees for the mortgagee but become trustees for the mortgagor as to the surplus which immediately becomes subject to the claims of junior mortgagees. They must act for the benefit of all concerned and must regard the interest of others as well as their own, especially if they had either actual or constructive notice through matters of public record of the existence of such liens. While the trust deed purports to recite the duties of the trustees, they cannot escape any obligation which, under the same conditions, would result upon a mortgagee. In foreclosing a mortgage in his favor, the mortgagee and the trustees must satisfy subordinate mortgages, judgments or liens against the property from the surplus in their possession before turning it over to the mortgagor. This rule is not a harsh one but a wholesome equitable requirement for the protection of junior encumbrances.

Church, Inc. v. Holmes, 60 App.D.C. 27, 30, 46 F.2d 608 (1931). Although the foreclosure of a senior encumbrance discharges junior lien holders, the latter still have an interest in the proceeds of the foreclosure sale and are entitled to any surplus to the extent of their interests as against the mortgagor after a senior encumbrance has been satisfied. Pioneer Credit Corp. v. Bloomberg, 323 F.2d 992, 994 (1st Cir.1963), citing Markey v. Langley, 92 U.S. 142, 23 L.Ed. 701 (1875). Appellant trustees recognize this principle.

There is no language in the deed of trust here requiring that the sale at auction be limited to cash payment in full. The trustees were given broad authority to sell the property upon such terms as they deemed advantageous for the interest of all the parties concerned. The powers granted did not require that the consent of appellee Quick, as second trust note holder, be obtained to the terms of the sale. She did receive notice of the date and time of the auction and the terms of the sale as advertised. Her husband as her representative was present at that time. The record reveals no irregularities in the sale. Where trustees are vested with discretion, they may arrange to sell for part cash and the balance on credit. A sale for credit generally produces a better price than a sale for all cash. It does not appear that a better price in cash could have been obtained by the trustees at foreclosure and the terms accepted seem to furnish the means of satisfying ultimately the debts of both the senior and junior trust note holders. Proceeds of the sale, when received over a period of time by the trustees, will be used by them to satisfy the first deed of trust note and thereafter the second trust note before turning over any balance to the mortgagors. We see no valid complaint to the procedure nor can it be said it was detrimental to appellee's legal rights.

With no evidence of fraud or bad faith on the part of the trustees, there is no basis for interference with the terms of

the sale as completed by the trustees, and we rule there was a reasonable exercise of the discretion with which they were clothed by the deed of trust to carry out the foreclosure. The trial judge erred as a matter of law in imposing personal liability upon them on the ground that they had exceeded their trustee powers in the foreclosure proceedings.

 With respect to appellee's contention that she was unprotected by the alleged improper transfer of the deferred purchase money note for $6,750 by the trustees to the Home Building Association of the District of Columbia, we hold that such delivery was for collection only of the payments due thereunder and deposit to the trustees' account for the purpose of ultimate disbursement by them. They have not been divested of control of or responsibility for the note payments. Mrs. Quick has suffered no damage as she still possesses a subordinate interest in the surplus after ultimate satisfaction of the lien. However, to clarify the record of the transfer by the trustees of the note for $6,750 to the Home Building Association, we direct that the following endorsements shall be placed upon the promissory note here involved:

> (a) The only purpose of the transfer of this note to the Home Building Association is for collection of the payments due thereunder;

> (b) Irma Quick, or her successors, as the legal holder of a second trust note on the property foreclosed, has a lien upon the surplus from the proceeds of the foreclosure sale secondary to satisfaction of the secured senior lien of the Home Building Association.

These endorsements will clearly reflect the purpose of the note's assignment and establish that appellee Quick is the possessor of the only subordinate lien against the surplus from the foreclosure sale.

As we find no misconduct or illegal action by the trustees in exercising this discretion respecting the foreclosure of the first deed of trust, the judgment of the trial court imposing liability upon them individually must be set aside and vacated and a judgment entered in their favor.

Reversed with instructions.